# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 681 | **DATE** | 8/8/2002 |
| **CASE TITLE** | CATHLEEN M. ROWELL vs. VOORTMAN COOKIES, LTD. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Amended Memorandum Opinion And Order. The defendants' motion to dismiss is granted in part and denied in part. Counts III, V, X, XI, and XIV are dismissed without prejudice. Count XIII is dismissed with prejudice. Defendants' motion to strike is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 12 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 17 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | 02 AUG -8 PM 6:55 Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CATHLEEN M. ROWELL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 02 C 0681 |
| v. | ) |
| | ) Judge John W. Darrah |
| VOORTMAN COOKIES, LIMITED, a Canadian | ) |
| Corporation; and HARRY VOORTMAN, | ) |
| Individually, | ) |
| | ) |
| Defendants. | ) |

**DOCKETED AUG 1 2 2002**

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiffs, on behalf of themselves and a class of similarly situated individuals, filed a fourteen-count complaint against Defendants, Voortman Cookies, Limited ("Voortman") and Harry Voortman ("H. Voortman"), alleging that the Defendants breached an exclusive distributorship agreement. Presently before the Court is the Defendants' Motion to Strike and Dismiss Plaintiffs' Complaint for failure to state a claim.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff need not plead facts or the elements of a claim, with those exceptions specified in Rule 9. Instead, a plaintiff need only plead the bare minimum facts necessary to put a defendant on notice of the claim so that the defendant can file an answer. *See Swierkiewicz v. Sorema*, 534 U.S. 506, ___ (2002) (*Sorema*);

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (*Higgs*).

A reading of the First Amended Complaint supports the following summary of the alleged conduct of the parties.

Plaintiffs are independent distributors of cookie products of Voortman, each of whom have exclusive sales territories contracted for with Voortman to sell and distribute Voortman products. H. Voortman is the President, Chief Executive Officer, Director, and sole or principal shareholder of Voortman.

The Plaintiffs, as distributors, and Voortman operated under the provisions of a Policy Manual and amendments and modifications made to such Policy Manual. The Policy Manual constituted a contract between the parties. Effective April 5, 2001, H. Voortman terminated the "deep discount, buy-in program" ("program"), which had existed in the Policy Manual for several years. The termination of the program caused the distributors' incomes to substantially decrease. The termination of the program is the basis of Plaintiffs' fourteen counts discussed separately below.

1. Count I - Violation of the Illinois Sales Representative Act

Plaintiffs allege that Defendants violated the Illinois Sales Representative Act ("ISRA"), 820 ILCS 120/1, by illegally terminating the program and refusing to pay commissions due under the program after Plaintiffs requested such commissions.

The ISRA provides that "[a]ll commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due." 820 ILCS 120/2. Furthermore, a principal that fails to comply

with section 2 "shall be liable in a civil action for exemplary damages...." 820 ILCS 120/3.

Defendants argue that the "termination" required under the statute is termination of employment and does not include termination of part of a contract. However, this question is more properly addressed in later proceedings, i.e., a motion for summary judgment, not at the pleading stage. Plaintiffs allege that they have commissions due them, that Voortman terminated at least a portion of the contract, and that Voortman has refused to pay the requested commissions. These allegations sufficiently plead a cause of action under the ISRA as they place the Defendants on notice of the claim against them.

2. Count II - Procuring Cause Claim

The procuring cause doctrine of Illinois common law entitles a party "to commission on sales made after termination of a contract if that party procured the sales through its activities prior to termination". *Hammond Group, Ltd. v. Spalding & Evenflo Co.*, 69 F.3d 845, 850 (7th Cir. 1995), quoting *Scheduling Corp. of Am. v. Massello*, 151 Ill. App. 3d 565 (1987). Here, Plaintiffs have alleged that their efforts prior to the termination of the contract were the procuring cause of the sales of cookies for at least one year after termination of such contract and that they have been denied the commissions for these sales. These allegations sufficiently plead a cause of action under the procuring cause doctrine of Illinois common law.

3. Count III - "Maintaining/Expanding Territories" Claim

Plaintiffs allege that they refrained from selling products competing with Voortman products, maintained facilities to promote the sale of Voortman products, and incurred expenses to maintain and expend their territories. As a result of the termination of the program, Plaintiffs will lose the monies expended by them to engage in these actions.

3

Defendants argue that Count III fails to plead a cause of action. In response, Plaintiffs quote part of a Seventh Circuit case, *P.S. & E., Inc. v. Selastmer Detroit, Inc.*, 470 F.2d 125, 128 (7th Cir. 1972), discussing expenditures in an agency relationship, and assert that such quotation constitutes the Seventh Circuit anticipating Illinois law. Plaintiffs do not indicate what Illinois law was anticipated and do not identify any specific cause of action under either federal or Illinois law under which Count III would fall. Nor can such a cause of action be inferred from the allegations found in Count III. Accordingly, the allegations in Count III fail to adequately place the Defendants on notice of the claim against them and is dismissed without prejudice.

4. Count IV - Interference with Prospective Economic Advantage

Plaintiffs claim that, as independent distributors of Voortman cookies, they built sales of Voortman products to their customers. H. Voortman knew of the Plaintiffs' work and encouraged the distributors to spend their time, money, energy, resources, and skills in designing and implementing marketing and sales programs for Voortman products. The Plaintiffs undertook these activities and built sales of Voortman products with their customers to build their own commissions. When Voortman terminated the program, the Plaintiffs could no longer earn part of the commissions for sales they had built-up through their undertakings. The termination of the program interfered with the business relationship that the Plaintiffs had with their customers and greatly decreased the Plaintiffs' incomes.

The tort of interference with prospective economic advantage occurs if: (1) a plaintiff has a reasonable expectancy of a valid business relationship; (2) the defendant knows about the expectancy; (3) the defendant intentionally interferes with the expectancy and so prevents it from ripening into a valid business relationship; and (4) the intentional interference must injure the

plaintiff. *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994 (1993).

Defendants argue that Plaintiffs did not sufficiently plead the elements of the cause of action. However, a review of the Amended Complaint demonstrates that the Plaintiffs sufficiently pled a cause of action for interference with prospective economic advantage and put the Defendants on notice of the claim against them. Plaintiffs allege that they reasonably expected the program to continue and that they forwent other means of income to operate as Voortman distributors in reliance on the program as well as the other aspects of the Policy. Furthermore, Voortman knew about this expectancy and encouraged Plaintiffs to expend time, energy, money, and resources to design and implement marketing and sales programs for the sale of Voortman products. The intentional termination of the program interfered with the Plaintiffs' present and future business relationships with their customers and caused the Plaintiffs to lose money via the lost commissions. Under the liberal federal pleading standards, Plaintiffs have sufficiently pled a cause of action for interference with prospective economic advantage.

5. Count V - "Future Lost Profits"

Plaintiffs claim that the illegal termination of the program prevented them from continuing to operate their exclusive territories in a manner that permitted them to earn the commissions they were entitled to earn under the program. The termination of the program prevented the Plaintiffs from earning lost profits.

Defendants argue that Count V should be dismissed because it seeks damages but does not state a cause of action for such damages. In response, Plaintiffs state that they had a valid business relationship with their customers and that the termination of the program breached that relationship, resulting in damages. Plaintiffs do not identify a specific cause of action that they

are attempting to allege in Count V. A reading of Count V shows that Plaintiffs seek lost profits; however, the cause of action that is alleged to receive such damages is not ascertainable by the pleadings. Accordingly, Count V fails to put the Defendants on notice of the claim against them and is dismissed without prejudice.

VI. Count VI - Breach of Implied Contract

In the alternative, Plaintiffs allege that the Defendants breached an implied contract in fact by terminating the program. Defendants argue that the claim should be dismissed because the implied contract is for an indefinite term; therefore, the statute of frauds is applicable.

In Illinois, a contract that cannot be performed within one year must be in writing. 740 ILCS § 80/1. Nevertheless, a statute of frauds defense can be waived by an acknowledgment of an agreement and the subject matter thereof. *R.J.N. Corp. v. Connelly Food Prod., Inc.*, 175 Ill. App. 3d 655, 663 (1988).

In the instant case, the Defendants have not yet filed an answer. Therefore, the statute of frauds defense may still be waived; and dismissal at this early stage of litigation is improper. *See Equiguard, Inc. v. Islandaire, Inc.*, 1999 WL 259953 (N.D. Ill. April 6, 1999) (denying motion to dismiss based on statute of frauds defense before answer was filed). Furthermore, an inference can be drawn from the Plaintiffs' Amended Complaint that the contract may have been able to be performed within one year, making the statute of frauds inapplicable.

Defendants also argue that the claim should be dismissed because it fails to allege all of the elements of an implied in fact contract. As set forth above, Plaintiffs need not plead all of the elements of a claim. The allegations set forth in Count VI clearly set forth sufficient information to place the Defendants on notice of the claim.

6

7. Count VII - *Quantum Meruit* Claim

In the alternative, the Plaintiffs also allege that Voortman has received and accepted money and services by virtue of service rendered by the Plaintiffs for several years while the program operated. Since termination of the program, the Plaintiffs have received nothing from Voortman for all of the services they rendered, and Voortman has received considerable income because of the illegal termination of the program. Voortman has been unjustly enriched by virtue of the Plaintiffs' acts and services and retention of benefits received from such acts and services.

A cause of action of *quantum meruit* exists if : (1) the plaintiff performed a service to benefit the defendant; (2) the plaintiff performed the service non-gratuitously; (3) the defendant accepted the service; and (4) no contract existed to prescribe payment of the service. *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1053 (1998).

Defendants argue that the claim should be dismissed because the Plaintiffs do not describe the specific services, how the services benefitted the Defendants, acceptance of the services, or the absence of a contract. Defendants' argument is without merit. The Plaintiffs need not allege specific facts or elements. Even if such a requirement did exist, the Plaintiffs' allegations in Count VII do adequately set forth the elements of a claim of *quantum meruit*.

8. Count VIII - Antitrust Claim

Plaintiffs allege that Defendants violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Plaintiffs allege that Voortman's termination of the program materially depreciated the Plaintiffs' ability to sell their particular territories at fair market value. Through the formula within the Policy Manual regarding the determination of the value of a territory, Voortman restricted and restrained the price for which a distributor could sell his territory even though the

Policy Manual also stated that each distributor was an independent businessman that had the right to sell his territory. The restriction and restraint had a severe effect on competition in the relevant market.

Defendants argue that the Plaintiffs lack standing to bring this cause of action.

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides individuals the right to bring suit under the Sherman Act. *See Sanner v. Board of Trade of the City of Chicago*, 62 F.3d 918, 926 (7th Cir. 1995) (*Sanner*). The scope of this right is restricted by certain doctrines, including antitrust standing. *See Sanner*, 62 F.3d at 926. Antitrust standing requires that a plaintiff demonstrate "a direct link between the antitrust violation and the antitrust injury". *Greater Rockford Enery & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993). Factors considered in determining whether antitrust standing exists include: (1) whether the injury was the type that Congress sought to redress with the antitrust laws, (2) the causal connection between the alleged anti-trust violation and the harm to the plaintiff, (3) improper motive, (4) the directness between the injury and the market restraint, (5) the speculative nature of the damages, and (6) the risk of duplicative recoveries or complex damages apportionment. *Sanner*, 62 F.3d at 927, quoting *Lovett v. General Motors Corp.*, 975 F.2d 518, 520 (8th Cir. 1992).

In the instant case, the Plaintiffs allege that the Defendants' restrictions on the sale of territories via the formula found in the Policy Manual and the requirement that any sale be approved by Defendants greatly restricted the price that the distributors could sell their territories even though such territories were "owned" by the distributors. Furthermore, the illegal termination of the program materially depreciated the Plaintiffs' abilities to sell their territories. These restrictions adversely affected competition in the relevant market area, including the

distributor who wanted to sell the territory and prospective purchasers who were deterred from purchasing a distributor's territory. It also restricted the sale of Voortman products. Based on these allegations and the factors cited above, the Plaintiffs have sufficiently pled antitrust standing at this stage of the litigation.

9. Count IX - Restraint on Alienation

Plaintiffs allege that the restraints Voortman imposed on the Plaintiffs which prevented them from selling their territories constituted an illegal restraint on alienation of the property interest they held in such territories.

Defendants argue that Count IX should be dismissed because the Plaintiffs failed to identify any statutory or common law basis for the assertion that the restrictions of the approval and guidelines for the sale prices are illegal. However, Count VIII does allege a statutory basis for the assertion that the approval and guidelines for the sale prices of the territories are illegal. Accordingly, Count IX is sufficiently pled.

10. Count X - Interference with Prospective Economic Advantage

Plaintiffs allege that H. Voortman's conduct interfered with the Plaintiffs' economic advantage. The alleged conduct set forth in Count X is duplicative of the alleged conduct set forth in the general facts of the Amended Complaint and Count IV of the Amended Complaint, which names both Defendants. Therefore, Count X appears to be duplicative and is dismissed without prejudice.

11. Count XI - "Tort of Outrage"

In Count XI, Plaintiffs allege that Defendants' conduct left the Plaintiffs "personally and emotionally devastated" and, through such misconduct, inflicted the "tort of outrage".

Defendants argue that Illinois does not recognize the tort of outrage. In response, Plaintiffs only argue that "Defendant does not support a Count XI in its dismissal motion."

In Illinois, the tort of outrage is otherwise commonly known as the tort of intentional infliction of emotional distress. *See Smith v. Metropolitan Life Ins. Co.*, 550 F. Supp. 896, 900 (N.D. Ill. 1982). In order to sustain a claim of intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct would cause severe emotional distress or knew that high probability existed that his conduct would cause severe emotional distress; and (3) the defendant's conduct actually caused severe emotional distress to the plaintiff. *See Doe v. Calumet City*, 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (1994).

In Count XI, Plaintiffs allege that all of the afore-described misconduct caused great upheavals in the Plaintiffs' lives and left the Plaintiffs personally and emotionally devastated. The Plaintiffs do not allege that the afore-mentioned misconduct, Counts I - X, was extreme and outrageous nor can such an inference be drawn from allegations such as a breach of contract and *quantum meruit*. Furthermore, Plaintiffs fail to allege that the Defendants either intended to cause severe emotional distress or knew that a high probability existed that their conduct, including breach of contract and *quantum meruit*, would cause severe emotional distress. Accordingly, Count XI is dismissed without prejudice.

12. Count XII - Promissory Estoppel

Plaintiffs allege, in the alternative, that if it is found that there is not a formal agreement between the parties permitting the Plaintiffs to operate under the program, the Plaintiffs are entitled to operate under the program based on promissory estoppel. The Plaintiffs operated

under the sales program for several years and purchased their territories and operated them in reliance on the establishment and existence of the program. The Plaintiffs were entitled to rely on the continued existence of the program.

Defendants argue that the Plaintiffs failed to adequately plead certain elements of the claim of promissory estoppel, for example, that the promise was in unambiguous terms, that the Plaintiffs' reliance was expected or foreseeable by the Defendants, and that the Plaintiffs relied to their detriment as a result of the reliance.

While the Plaintiffs may not have pled specific terms, the Amended Complaint sufficiently sets forth a claim for promissory estoppel under the liberal pleading requirements of the federal court.

13. Count XIII - Violation of Illinois Criminal Statutes and the Hobbs Act

Plaintiffs allege that the Defendant' conduct constituted violations of Illinois Criminal Statutes, including extortion and theft. The Defendants' misconduct also violated the Federal Hobbs Act, 18 U.SC. § 1952, *et seq*.

Defendants argue that the Plaintiffs cannot bring civil actions for violation of the Illinois Criminal Code and the Hobbs Act.

Civil actions cannot be brought for violation of the Illinois Criminal Code, *Jacobs v. Paynter*, 727 F. Supp. 1212,   (N.D. Ill. 1989); and the Hobbs Act does not allow a private right of action, *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, (N.D. Ill. 1996). Accordingly, Count XIII is dismissed with prejudice.

14. Count XIV - Racketeer Influence and Corrupt Organization Act ("RICO") Violation

Plaintiffs allege that the Defendants' conduct constituted a RICO, 18 U.S.C. § 1962,

violation. H. Voortman, in concert with Voortman, caused the program to be terminated, depriving and defrauding the Plaintiffs of income. The Defendants terminated the program as part of a conspiracy to deprive the Plaintiffs of commissions and to enhance the appearance of Voortman's financial statements for purposes of having a more favorable financial picture to potential buyers of Voortman.

To state a cause of action under RICO, Plaintiffs must allege with particularity (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 249 (7th Cir. 1995); *R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F.Supp. 1499, 1516 (N.D.Ill. 1990) (*Davis*).

Defendants argue that the RICO claim should be dismissed because the Plaintiffs failed to allege a racketeering offense as enumerated in 18 U.S.C. § 1961(1).

Section 1961(1) identifies criminal conduct that constitutes "racketeering activity". The criminal conduct includes violations of the Hobbs Act, 18 U.S.C. § 1981(1)(B). In the instant case, the Plaintiffs have pled that Defendants' conduct constituted a violation of the Hobbs Act.[1] However, the alleged conduct of the Defendants fails to support the alleged violation of the Hobbs Act. The court examines a complaint as a whole in analyzing a motion to dismiss and need not ignore facts alleged in the complaint that undermine a plaintiff's claim. *See Slaney v. International Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001).

The Hobbs Act prohibits the interference with commerce by robbery or extortion or attempts or conspiracy to interfere with commerce by robbery or extortion. 18 U.S.C. § 1951(a).

---

[1]The Plaintiffs also allege a violation of the Illinois Criminal Code. However, such violations are not included as racketeering activity under Section 1961(1).

12

As used in the Hobbs Act, robbery is "the unlawful taking or obtaining of personal property from a person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury ...." 18 U.S.C. § 1951(b)(1). Extortion under the Hobbs Act means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *United States v. Granados*, 142 F.3d 1016, 1019 (7th Cir. 1998).

The Plaintiffs do not allege a "robbery" in their Amended Complaint, and an inference of such an allegation cannot be construed as there are no allegations of the taking of property by actual or threatened force or violence or fear of injury as required by the Hobbs Act. *See* 18 U.S.C. § 1951(b)(1). The Plaintiffs do make a conclusory allegation of extortion. However, the Plaintiffs repeatedly plead that the program and the subsequent commissions not received from the termination of the program were taken without the consent of the Plaintiffs and against the Plaintiffs' opposition to the termination of the program. Accordingly, the property was not taken with the Plaintiffs' consent, as required by the Hobbs Act; and the Amended Complaint fails to allege an extortion under the Hobbs Act. Because the Plaintiffs fail to adequately plead a racketeering activity, the RICO claim is dismissed without prejudice.

For the foregoing reasons, the Defendants' Motion to Dismiss is granted in part and denied in part. Counts III, V, X, XI, and XIV are dismissed without prejudice. Count XIII is dismissed with prejudice. Defendants' Motion to Strike is denied.

Dated: August 8, 2002

JOHN W. DARRAH
United States District Judge

13